# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| **THE BANK OF NOVA SCOTIA,** | )<br>)<br>) |
| **Plaintiff,** | ) |
| v. | )<br>) Civil Action No. 2016-0019 |
| **EARLE G. ROBINSON a/k/a**<br>**EARLE ROBINSON; HILARY M.**<br>**ROBINSON a/k/a HILARY ROBINSON,** | )<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

**Attorneys:**
**Ryan C. Meade, Esq.,**
**Claire Tagini, Esq.,**
Miami, FL
  *For Plaintiff*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" filed by Plaintiff Bank of Nova Scotia (the "Bank") against Defendants Earle G. Robinson a/k/a Earle Robinson and Hilary M. Robinson a/k/a Hilary Robinson (the "Robinsons") in this debt and foreclosure action. (Dkt. No. 20). For the reasons discussed below, the Court will grant Plaintiff's Motion for Default Judgment.

## I. BACKGROUND

On April 21, 2016, the Bank filed a Complaint against the Robinsons. (Dkt. No. 1). The Complaint alleges that, on March 20, 2009, the Robinsons executed a Promissory Note (the "Note") in which they promised to pay the principal sum of $524,000.00, together with interest at the rate of 5.90% per annum, in equal monthly installments of $3,108.04. (*Id.* ¶ 6). Repayment of the Note was secured by a first priority mortgage (the "Mortgage"), also executed on March 20,

2009 by the Robinsons, encumbering the following real property (the "Property") owned by the Robinsons, as described in the General Warranty Deed as:

> Plot No. 129, consisting of 0.649, U.S. Acres, more or less, of Estate Frederikshaab, West End Quarter, St. Croix, as more fully shown in P.W.D. Drawing No. 4909 dated March 18, 1994, as revised January 21, 1997.

(Dkt. No. 35-3).[1]

The Complaint goes on to say that the Robinsons defaulted under the terms and conditions of the Note and Mortgage by failing to make the payment due on April 20, 2014 and all subsequent payments. (Dkt. No. 1, ¶ 10). The Bank gave notice of default to the Robinsons by correspondence dated January 11, 2016, advising them that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage. *Id.,* ¶ 11, Dkt. No. 1-3. Following the Robinsons' failure to cure, the Bank elected to accelerate the loan, and the entire unpaid principal sum with unpaid accrued interest and late charges became immediately due and payable, which the Bank calculated to be $486,997.98. *Id.,* ¶ 12. The Bank asks that judgment include all unpaid principal and interest due and payable, plus interest accruing thereafter; attorney's fees and other expenses incurred to enforce payment of the Note; foreclosure of the Property and sale of the Property to satisfy the Note; and the recovery of any deficiency from the Robinsons. *Id*. pp. 4-5.

Hilary M. Robinson was personally served with the Summons and Complaint on June 30, 2016 on St. Croix. (Dkt. No. 8). Earle G. Robinson was personally served on September 9, 2016 on St. Croix. (Dkt. No. 11). The Robinsons did not appear or otherwise answer the Complaint. The

---

[1] The Complaint describes the Property as:
> Plot No. 129 Estate Frederikshaab
> West End Quarter
> St. Croix, U.S. Virgin Islands
> consisting of 0.649 US acre
> as more fully shown on Drawing No. 4909, dated March 18 1994 and
> most recently revised January 21, 1997

(Dkt. No. 1, ¶ 8).

Bank filed an Application for Entry of Default against the Robinsons on October 26, 2016 (Dkt. No. 13), and the Clerk of Court entered default against them on November 1, 2016. (Dkt. No. 17).

On November 23, 2016, the Bank filed its Motion for Default Judgment which incorporates a Memorandum of Law (Dkt. No. 20), along with supporting exhibits (Dkt. Nos. 22-29) including, *inter alia*, an Affidavit of Indebtedness (Dkt. No. 22) and a Declaration of Counsel. (Dkt. No. 28).

In its Memorandum, the Bank states that the supporting documents show that the Robinsons executed the Note in which they promised to pay the Bank the principal sum of $524,000.00, with interest at the rate of 5.90% per annum, and that repayment of the loan was secured by the Mortgage on the Property that the Robinsons also executed. *Id.* at 2. The Memorandum further provides that because the Robinsons defaulted under the terms and conditions of the Note and Mortgage by failing to pay the April 20, 2014 payment and all subsequent payments, the Bank—as holder of both instruments—elected to accelerate the loan, declaring all amounts due. *Id.* at 3. The Bank asserts that neither Earle Robinson nor Hilary Robinson is in active service of the United States Armed Forces, as shown by the Department of Defense Manpower Data Report for both Defendants, *id.,* Dkt. No. 29; that based on their birth dates, neither Defendant is an infant, *id.*, Dkt. No. 28; and that to the best of counsel's information and belief, as set forth in counsel's Declaration, neither Defendant is incompetent. *Id.*, Dkt. No. 28. The Bank also asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 7-8.

With regard to the amount of the judgment, the Bank's Memorandum cited the Affidavit of Indebtedness which sets forth the amounts due. *Id.* at 3-4. The Affidavit is signed by Adonis Morton, a Real Estate Owned Asset Disposal Manager with the Bank. (Dkt. No. 22-1). Mr. Morton avers that he is familiar with the loan in default in this case, and that the information in his Affidavit was taken from his personal knowledge and the Bank's business records. *Id.*, ¶¶ 1-3. Based on his

review of the records, Mr. Morton avers that the Bank owns and holds the Note and Mortgage. *Id.* ¶ 6. The Affidavit sets forth the amounts due and owing the Bank through December 4, 2016, totaling $617,618.60. *Id.* ¶ 10.

Attached to the Memorandum is a Declaration of the Bank's Counsel, Claire E. Tagini, Esq., who states that: Earle G. Robinson and Hilary M. Robinson were personally served with the Summons and Complaint but failed to answer or otherwise respond; upon information and belief the Robinsons are over the age of eighteen; and upon information and belief, the Robinsons are competent. (Dkt. No. 28-1). Attorney Tagini also avers that, as reflected in the Status Reports from the Department of Defense Manpower Data Center, the Robinsons have never been active duty members of the U.S. Armed Forces. *Id.,* Dkt. No. 29-1.

On August 16, 2017, the Court issued an Order directing the Bank to provide supplemental information to address certain deficiencies in its Affidavit of Indebtedness. (Dkt. No. 30). In response, the Bank filed an Amended Affidavit of Indebtedness with exhibits. (Dkt. No. 35). The Amended Affidavit was also executed by Mr. Morton and sets forth the indebtedness due on the account up to and including November 22, 2016: $492,489.30 in unpaid principal balance; interest from March 20, 2014 through November 22, 2016 of $76,621.12; late charges of $5,905.20; escrow advances of $37,377.66, consisting of $11,613.65 in property taxes and $25,764.00 in property insurance; and recoverable balance of $1,153.75, consisting of property preservation and inspection costs of $53.75, and appraisal and Broker's Price Opinion fees of $1,100.00. *Id.* ¶ 10. The total indebtedness through November 22, 2016 is $613,547.03. *Id.* According to the Amended Affidavit of Indebtedness, interest accrues at the per diem rate of $78.72 after November 22, 2016. *Id.* ¶ 13.

In response to the Court's August 16, 2017 Order, the Bank also filed a "Declaration of Counsel in Support of Attorney's Fees and Costs Request." (Dkt. No. 31). Attorney Tagini, averred

4

that the Bank expended $1,690.00 in attorney's fees and incurred $1,127.00 in costs. *Id.* She added that foreclosure actions such as this one involve a negotiated flat fee rate, based on an estimated average of fifteen hours from inception of the action through judgment. *Id.* Due to the flat fee arrangement, neither the Declaration nor the attached billing summary included counsel's hourly rate. In addition, the billing summary did not set forth all the tasks completed by counsel in litigating this case, but instead provided the percentage of the flat fee received at various points in the litigation. *Id.,* Dkt. No. 31-1. Attorney Tagini stated that the Bank "will incur an additional $500 in costs plus the $75 writ fee for attaching the real property and publishing notice of the Marshal's Sale with the VI . . . Source." *Id.*

## II. DISCUSSION

### A. Default Judgment Standard

In a motion for default judgment, "a district court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. . . . Rather, the plaintiff must prove that he is entitled to the damages sought." *Polidoro v. Saluti*, __ F. App'x __, 2017 WL 90348, at *1 (3d Cir. Jan. 10, 2017) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co*., 189 F.2d 242, 244 (3d Cir. 1951). In the context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star*

*Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemembers] Civil Relief Act.

*United States v. Woods,* 2016 WL 6471448, at *6 (D.V.I. Oct. 31, 2016) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 55(b). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

### B. Analysis

#### 1. Default Judgment

The Bank has satisfied the requirements necessary to obtain a default judgment against the Robinsons. It has shown that the Robinsons were personally served (Dkt. Nos. 8, 11, 15); that they have not appeared; and that default was entered against them by the Clerk of Court (Dkt. No. 17). In addition, in her Declaration, Attorney Tagini averred that, "upon information and belief," the Robinsons are both adults and competent. (Dkt. No. 28-1), which suffices to satisfy these two default judgment factors. *See FirstBank Puerto Rico v. Jaymo Properties, LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (holding that bank attorney's affidavit stating in good faith that defendant was a competent adult is sufficient to find that a non-appearing defendant is not a minor or incompetent person for the purposes of obtaining a default judgment). The Bank provided a copy of Status

Reports from the Department of Defense Manpower Data Center showing that the Robinsons are not active members of the military service as defined in the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 29-1).

The Bank has also shown with specificity how it calculated the amount of damages due by providing the Amended Affidavit of Indebtedness of Adonis Morton and documentation that supports each category of damages it seeks, for a total indebtedness of $613,547.03 as of November 22, 2016, with interest accruing at $78.72 per diem until the date of judgment. (Dkt. No. 35).

The Court has considered the *Chamberlain* factors and finds that the prejudice to the Bank resulting from the Robinsons' breach of their contractual obligations, and the apparent absence of a litigable defense weigh in favor of the Court granting default judgment. Further, the Robinsons' default is a result of their culpable conduct as evidenced by their failure to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

Consequently, default judgment against Defendants Earle G. Robinson a/k/a Earle Robinson and Hilary M. Robinson a/k/a Hilary Robinson is appropriate.

**2. Attorney's Fees and Costs**

The Bank has requested $1,690.00 in attorney's fees, and $1,127.00 in costs as part of its damages, and provided a Declaration by Attorney Tagini and a billing summary in support. (Dkt. No. 31). In her Declaration, counsel anticipated that $500 in additional costs plus the $75.00 writ fee would be expended to complete the foreclosure proceedings. *Id.* The Court, however, does not

award anticipatory damages for attorney's fees and expenses not yet incurred. Rather, the Judgment and Order permits counsel to seek an additional award of attorney's fees, costs, and expenses to be determined upon appropriate application filed with the Court prior to entry of an Order confirming the sale of the Property.

Under the terms of the Mortgage, the Bank is entitled to recover "all costs incurred or sums paid by Mortgagee" expended in the foreclosure proceedings, including "reasonable attorney's fees." (Dkt. No. 24-1, ¶¶ 20.1, 20.2). Typically, the Court looks to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013). However, the Mortgage provides as follows:

> [T]he term "attorney's fees" as used herein shall mean the fees charged to Mortgagee by Mortgagee's attorneys for the time expended by any attorney, paralegal, legal assistant, or law clerk employed by Mortgagee's attorneys, plus disbursements incurred by said attorneys on behalf of Mortgagee. In determining the reasonableness of attorney's fees, the rates charged by Mortgagee's attorneys to Mortgagee shall be presumed to be reasonable except upon a showing that the rates charged the Mortgagee are in excess of the standard and customary hourly rates charged by the said attorneys. It is the express intention of Mortgagor and Mortgagee that indemnification for attorney's fees be governed by contract rather than by statute or judicial discretion.

(Dkt. No. 24-1 at 7, ¶ 20.2). "[C]ourts are obligated to enforce contracts as they are made by the parties and not to create additional terms out of thin air." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 271 (3d Cir. 2004).

The Mortgage provides that the hourly rate charged by the Bank's attorneys is presumed to be reasonable unless challenged, which it was not. Based on the terms of the Mortgage, the Court will award the amount of fees requested—$1,690.00 which, in any event, compares with similar uncontested debt and foreclosure default judgment cases before this Court. *See, e.g., Bank of Nova Scotia v. Brooks,* Civil No. 2014-0062 (D.V.I. Mar. 14, 2017) (awarding $1,770.00 in attorney's fees).

With regard to costs and expenses, under the terms of the Mortgage, the Bank is entitled to recover "all costs incurred or sums paid" as a result of an action to foreclose and sell the Property. (Dkt. No. 24-1 at 7, ¶ 20.2). This reimbursement is permitted by contract, the terms of which are regularly enforced by courts. *See Fields,* 363 F.3d at 271; *Rainey v. Hermon*, 2011 WL 4738534, at *6 (V.I. Oct. 6, 2011) (enforcing the terms of a contract, even for legal fees and administrative costs, "unless the fee is unreasonable."). The Bank is seeking reimbursement of $1,127.00 for the following sums: title searches, filing fee, recording fee for notice of lis pendens, service fees, and GAP search fees. (Dkt. No. 31-1). The Court will award costs and expenses of $1,127.00 sought by the Bank, which were reasonably incurred in this debt and foreclosure action.

### III. CONCLUSION

Plaintiff Bank of Nova Scotia has satisfied the requirements necessary for a default judgment against Defendants Earle G. Robinson a/k/a Earle Robinson and Hilary M. Robinson a/k/a Hilary Robinson. The Court will grant the Bank's Motion for Default Judgment (Dkt. No. 20) on the debt and foreclosure causes of action in its Complaint. In this regard, the Court will award $492,489.30 in unpaid principal balance; interest from March 20, 2014 through November 22, 2016 of $76,621.12; late charges of $5,905.20; escrow advances of $37,377.66; and recoverable balance of $1,153.75, for a total indebtedness of $613,547.03 in damages. Per diem interest of $78.72 accrues from November 23, 2016 up to and including the date of this Judgment (March 27, 2018), in the amount of $53,057.28, for a total award of $666,604.31. In addition, the Court will award $1,690.00 in attorney's fees and $1,127.00 in expenses, for a total award of $2,817.00 in attorney's fees and expenses through August 14, 2017.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: March 27, 2018                    _____/s/_____
                                        WILMA A. LEWIS
                                        Chief Judge